SEYFARTH SHAW LLP
Ari M. Hersher (SBN 260321)
ahersher@seyfarth.com
Ryan McCoy (SBN 276026)
rmccoy@seyfarth.com
560 Mission Street, 31st Floor
San Francisco, California 94105
Telephone: (415) 397-2823
Facsimile: (415) 397-8549

Attorneys for Defendants
THE HERTZ CORPORATION and DTG OPERATIONS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAN NEREU, an individual,<br><br>Plaintiff,<br><br>v.<br><br>THE HERTZ CORPORATION; DTG OPERATIONS, INC.; and DOES 1 to 25, inclusive,<br><br>Defendants. | Case No.<br><br>**DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION TO THE UNITED STATES DISTRICT COURT**<br><br>[*Filed concurrently with Declaration of Jaimie Tison, Declaration of Ryan McCoy, Civil Case Cover Sheet, Notice of Interested Parties, and Corporate Disclosure Statement*]<br><br>San Francisco County Superior Court Case No. CGC-19-579467<br><br>Action Filed: September 23, 2019 |

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF SEAN NEREU AND HIS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. sections 1332, 1441, and 1446, Defendants The Hertz Corporation and DTG Operations, Inc. ("Defendants"), by and through undersigned counsel, hereby file this Notice of Removal pursuant to 28 U.S.C sections 1441 and 1446, asserting Diversity Jurisdiction pursuant to 28 U.S.C. section 1332, to effect the removal of the above-captioned action from the Superior Court of the State of California for the County of San Francisco, Case No. CGC-19-579467 (the "Action") to the United States District Court for the Northern District of California. In support of its Notice of Removal, Defendants state as follows:

## I. BACKGROUND AND PROCEEDINGS IN STATE COURT

1. On September 23, 2019, Sean Nereu ("Plaintiff") filed an unverified Complaint for Damages in the Superior Court of California, County of San Francisco, entitled "*Sean Nereu, an individual v. The Hertz Corporation; DTG Operations, Inc.; and Does 1 through 25, inclusive*" (the "Complaint"), designated as Case No. CGC-19-579467 (the "State Court Action").

2. The Complaint alleges causes of action for: (1) retaliation in violation of Cal. Labor Code § 1102.5 and of Cal. Government Code § 12940 et seq.; (2) failure to prevent harassment and retaliation in violation of Cal. Government Code § 12940 et seq.; (3) wrongful termination in violation of public policy; (4) negligent hiring, retention and supervision; (5) failure to pay overtime compensation pursuant to Cal. Labor Code §§ 510 and 1194; (6) failure to provide meal and rest periods pursuant to Cal. Labor Code §§ 226.7 and 512; (7) penalties for failure to pay wages due pursuant to Cal. Labor Code § 558; (8) waiting time penalties pursuant to Cal. Labor Code § 203; (9) failure to provide accurate itemized wage and hour statements pursuant to Cal. Labor Code §§ 226, et seq.; and (10) unfair competition pursuant to Bus. & Prof. Code §§ 17200, et seq.

3. On October 1, 2019, Defendants' agent for service of process received by mail the summons, Complaint, and other court documents, at their California addresses, with no notice and acknowledgement of receipt included. Declaration of Ryan McCoy ("McCoy Decl."), ¶ 3, Ex. A to McCoy Decl.

4. On October 29, 2019, Defendants answered the Complaint in San Francisco County Superior Court. McCoy Decl., ¶ 4, Ex. B to McCoy Decl. Defendants consent to this Notice of Removal. *Id.* Defendants are informed and believe that the documents attached to the Declaration of Ryan McCoy as Exhibits A and B constitute the entirety of the state court file in this action. McCoy Decl., ¶ 5.

## II. TIMELINESS OF REMOVAL

5. This notice of removal is timely filed as it is filed less than one year from the date this action was commenced and within thirty days of receipt of the Complaint upon Defendants on October 1, 2019. *See* 28 U.S.C. § 1446(b)(1); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 119 S. Ct. 1322 (1999) (explaining the time for filing a notice of removal does not run until a party has been formally served with the summons and complaint under applicable state law).

## III. DIVERSITY JURISDICTION

6. This Court has original jurisdiction of this action under 28 U.S.C. § 1332(a)(1). As set forth below, this action is removable pursuant to 28 U.S.C. § 1332(a) because it is between citizens of different states, and the amount in controversy is in excess of seventy-five thousand dollars ($75,000), exclusive of interest and costs. Accordingly, this action is removable to this Court pursuant to 28 U.S.C. § 1441(a).

### A. Diversity of Citizenship

#### 1. Plaintiff Is A Citizen of California

7. To establish citizenship for diversity purposes, a natural person must be both (a) a citizen of the United States and (b) a domiciliary of one particular state. *Kantor v. Wellesley Galleries, Ltd.*, 704 F. 2d 1088, 1090 (9th Cir. 1983). A person's domicile is the place where he or she resides with the intent to remain indefinitely. *See Kanter v. Warner-Lambert Co.*, 265 F. 3d 853, 857 (9th Cir. 2001) ("A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return … ."). Citizenship is determined by an individual's domicile at the time the lawsuit is filed. *See Armstrong v. Church of Scientology Int'l*, 243 F.3d 546 (9th Cir. 2000); *see also Zavala v. Deutsche Bank Trust Co. Americas*, 2013 WL 3474760, at *3 (N.D. Cal. July 10, 2013) (explaining

where a complaint alleges plaintiff resides in California, "in the absence of evidence to the contrary, [plaintiff] is a California citizen for diversity purposes").

8. Here, Plaintiff alleges he "is and at all times relevant hereto was a resident of the County of San Francisco, State of California." *See* Complaint, ¶ 4. This allegation is consistent with Plaintiff's employment: Plaintiff listed a California address and maintained a California address on file for purposes of his personnel file, payroll checks, state payroll, and tax withholdings during his employment. *See* Declaration of Jaimie Tison ("Tison Decl."), ¶ 7. Defendants therefore are informed and believe, and on that basis allege, that Plaintiff's last known address is in California. Accordingly, Plaintiff is a citizen of California for the purposes of diversity.

**2. Neither Defendant Is A Citizen Of California**

9. Defendants are not now, and were not at the time of the filing of this action, citizens of the State of California within the meaning of 28 U.S.C. § 1332(c)(1).

10. "[A] corporation shall be deemed to be a citizen of every State … by which it has been incorporated and of the State … where it has its principal place of business." 28 U.S.C. § 1332(c); *Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026, 1028 (9th Cir. 2009) ("[A] corporation is a citizen of (1) the state under whose laws it is organized or incorporated; and (2) the state of its 'principal place of business.'"). The appropriate test to determine a corporation's principal place of business is the "nerve center" test. *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010). Under the "nerve center" test, the principal place of business is the state where the "corporation's officers direct, control, and coordinate the corporation's activities" and where the corporation maintains its headquarters. *Id.*

11. The Hertz Corporation is incorporated under the laws of Delaware, with its principal place of business in Florida. *See* Tison Decl., ¶ 3. The Hertz Corporation's principal place of business is in Estero, Florida because its "nerve center" is located in Estero, Florida. *Id*. The Hertz Corporation's corporate headquarters are located in Estero, Florida, and The Hertz Corporation's executive and administrative functions take place in Florida. *Id*. Therefore, for purposes of diversity, The Hertz Corporation is a citizen a Delaware and Florida.

12. DTG Operations, Inc. is incorporated under the laws of Oklahoma, with its principal place of business in Estero, Florida. DTG Operations, Inc.'s principal place of business is in Estero,

Florida because its "nerve center" is located in Estero, Florida. *See* Tison Decl., ¶ 4. DTG Operations, Inc.'s corporate headquarters are located in Estero, Florida, and DTG Operations, Inc.'s executive and administrative functions take place in Florida. *Id*. For purposes of diversity, DTG Operations, Inc. is therefore a citizen a Oklahoma and Florida, and not California.

13. Plaintiff's Complaint acknowledges this diversity, alleging The Hertz Corporation "was and is a Delaware corporation" and DTG Operations "was an is a Oklahoma corporation," both doing business in the State of California. *See* Complaint, ¶¶5-6.

14. Accordingly, because Plaintiff is a citizen of California, and because neither Defendant is a citizen of California, diversity of citizenship exists between Plaintiff and Defendants for purposes of removal jurisdiction.

**3. Doe Defendants' Citizenship Must Be Disregarded**

15. The residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332. *See Fristoe v. Reynolds Metals Co.*, 615 F. 2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition); *see also Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 n.1 (9th Cir. 1988) (Doe defendants need not join in removal). Thus, the existence of Does 1 through 20, inclusive, should be disregarded and does not deprive this Court of jurisdiction.

**B. The Amount In Controversy Exceeds $75,000.00**

16. While Defendants deny any liability as to Plaintiff's claims, the amount in controversy requirement is satisfied because, it is more likely than not, the amount in controversy in this action, exclusive of interest and costs, exceeds the sum of $75,000.00 based on the allegations, claims, and prayer for relief set forth in Plaintiff's Complaint.

17. An action may be removed if a defendant establishes, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional amount. *Guglielmino v. McKee Foods Corp.*, 506 F. 3d 696, 699 (9th Cir. 2007). To establish by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount, a defendant must provide evidence establishing that it is "more likely than not" that the amount in controversy exceeds that amount. *Sanchez v. Monumental Life Ins. Co.*, 102 F. 3d 398, 404 (9th Cir. 1996). The jurisdictional amount

may be determined from the face of the complaint. *Singer v. State Farm Mutual Automobile Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997). However, as explained by the Ninth Circuit, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez v. Allstate Ins. Co.*, 372 F. 3d 1115, 1117 (9th Cir. 2004).

18. In determining the amount in controversy, the Court must consider the aggregate of general damages, special damages, punitive damages, and attorneys' fees. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees to be included in amount in controversy, regardless of whether such an award is discretionary or mandatory); *Davenport v. Mutual Benefit Health & Accident Ass'n*, 325 F. 2d 785, 787 (9th Cir. 1963) (punitive damages must be taken into account where recoverable under state law); *Conrad Assoc.'s v. Hartford Accident & Ind. Co.*, 994 F. Supp. 1196, 1198 (N.D. Cal. 1998) ("amount in controversy" includes claims for general and special damages).

19. Plaintiff seeks damages, including but not limited to lost wages, benefits, other financial losses, civil penalties, loss of reputation, humiliation, embarrassment, mental anguish, severe physical distress, and extreme emotional distress. *See* Complaint ¶¶ 42, 43, 49, 60-61, 68, 81, 88, 93, 97, 104, 117; Prayer for Relief.

20. Considered together, the damages sought by Plaintiff, along with the attorneys' fees and punitive damages that might be awarded if Plaintiff prevails (*see* Complaint ¶¶ 40-41, 50-51, 62, 69, 102, 117; Prayer for Relief), establish by a preponderance of the evidence that the amount in controversy easily exceeds $75,000.00, exclusive of interest and costs, as required by 28 U.S.C. section 1332(a).

**1. Alleged Lost Wages, Benefits, and Emotional Distress**

21. Plaintiff seeks to recover lost wages and benefits following his alleged wrongful termination. *See* Complaint ¶¶ 42, 49, 60, 68; Prayer for Relief. Plaintiff alleges his employment spanned from December 5, 2017 to July 16, 2019, a period of approximately 84 weeks, or approximately 34 biweekly pay periods. *Id.* at ¶¶ 18, 29. During his employment, Plaintiff was paid $2,307.70 in gross wages every two weeks. *See* Tison Decl. ¶ 6. As such, if trial were set for one year from now in November 2018 (approximately 68 weeks after Plaintiff was terminated), and assuming Plaintiff would have received no increase in salary during that period, Plaintiff could potentially seek **$78,461.80** in

back wages alone, not including damages for lost benefits (*i.e.*, $2,307.70 biweekly wages x 34 pay periods). This sum does not include any future wages Plaintiff seeks to recover which would only increase the amount in controversy. *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018) (future wages are "at stake" in the litigation and must be considered in assessing the amount in controversy). Thus, Plaintiff's alleged lost wages establishes, by itself, the minimum amount in controversy requirement of $75,000.

22. In addition to lost wages, Plaintiff seeks to recover general damages including, but not limited to, loss of reputation, humiliation, embarrassment, mental anguish, severe physical distress, and extreme emotional distress. *See* Complaint ¶¶ 43, 49, 61, 68; Prayer for Relief.

23. To establish the amount in controversy, a defendant may rely on jury verdicts in cases involving similar facts and claims. *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1033 (N.D. Cal. 2002); *Kroske v. US Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005). California jury verdicts in similar cases alleging retaliation and wrongful termination often exceed $75,000. *See Woodruff v. Pacific Gas & Electric*, 2018 WL 4908010 (San Francisco County Sup. Ct. Jul. 20, 2018) (plaintiff awarded $150,000.00 in general damages for claims of retaliation in violation of Cal. Lab. Code § 1102.5 and Cal. Gov. Code § 12940 *et seq.*, and wrongful termination in violation of public policy); *Yu v. Grifols Biologicals Inc.*, 2017 WL 9807466 (Los Angeles Sup. Ct. Nov. 15, 2017) (plaintiff awarded $285,785.00 in general damages for claims of retaliation in violation of Cal. Lab. Code § 1102.5 and wrongful termination in violation of public policy); *Williams v. Wyndham Vacation Ownership*, 2016 WL 8114384 (San Francisco County Sup. Ct. Nov. 17, 2016) (plaintiff awarded $1.3 million in general damages for claims of retaliation in violation of Cal. Lab. Code § 1102.5 and wrongful termination in violation of public policy). McCoy Decl., ¶ 6, Ex. C to McCoy Decl.

24. As alleged in the Complaint, Plaintiff claims he was retaliated against, and ultimately terminated, and that he experienced mental and emotional distress as a result. These allegations are factually similar to the issues presented in the above cases, which demonstrate that, for diversity purposes, the value of Plaintiff's emotional distress claims on their own exceed the $75,000 amount in controversy requirement.

**2. Plaintiff's Overtime Claim (Fifth Cause of Action)**

25. The Complaint alleges that "Plaintiff's work schedule generally consisted of 5 days a week, from 7:00 am to 7:00 pm, or 12 hours a day." Complaint, ¶ 19. Further, Plaintiff alleges that Defendants failed to pay Plaintiff any overtime wages throughout his employment. *Id.* at ¶¶ 72-73.

26. Labor Code section 510(a) provides that "[a]ny work in excess of eight hours in one workday … shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee." Thus, working an average of twelve hours per day amounts to approximately four hours of overtime compensation per day, or twenty (20) hours per week.

27. Accordingly, assuming Plaintiff's own allegations as true for purposes of removal, Plaintiff worked twenty overtime hours each week during his employment and he did not receive overtime wages on either a daily or weekly basis. Thus, using Plaintiff's approximate hourly rate based on his salary at the time of his termination, Plaintiff's claim for unpaid overtime wages reasonably amounts to at least **$72,693.60** (*i.e.*, $2,307.70 biweekly wages / 80 regular hours per pay period = $28.85 hourly rate x 1.5 premium = $43.27 overtime rate x 20 overtime hours per week x 84 workweeks).

28. Thus, based on Plaintiff's own allegations, Plaintiff's unpaid overtime claims have placed at least $72,693.60 in controversy.

**3. Plaintiff's Claim for Meal and Rest Periods (Sixth Cause of Action)**

29. The Complaint alleges that Plaintiff "was not permitted to, and not advised of Plaintiff's right to take statutory 10-minute rest breaks for every four hours worked or majority portion thereof," and further alleges Plaintiff "did not receive uninterrupted statutory 30-minute meal periods … *each day* Plaintiff worked." Complaint ¶¶ 22-23 (emphasis added).

30. Labor Code section 226.7(c) provides "[i]f an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law … the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided."

31. Accordingly, using Plaintiff's approximate hourly rate based on his salary at the time of his termination, and using Plaintiff's own allegation that he was never provided a compliant first meal

period, Plaintiff's claims for meal and rest break penalties reasonably amount $12,117.00 each, totaling **$24,234.00** for Plaintiff's meal and rest period violations (*i.e.*, $28.85 hourly rate x 5 workdays x 84 workweeks).

**4. Plaintiff's Claim for Waiting Time Penalties (Eighth Cause of Action)**

32. The Complaint alleges that "Defendants failed to pay all of the Plaintiff's accrued wages and other compensation due immediately upon termination." (Ex. A, Complaint ¶ 94.)

33. Labor Code § 203(a) states that the wages of an employee who is discharged "shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."

34. Defendants deny that Plaintiff was not paid his final wages in a timely manner. However, taking Plaintiff's allegations as true, the amount in controversy for Plaintiff's waiting time penalties claim would be approximately **$6,923.10** [*i.e.*, ( $2,307.70 / 10 days) x 30 days].

**5. Plaintiff's Claim for Inaccurate Wage Statements (Ninth Cause of Action)**

35. The Complaint alleges that in violation of Labor Code 226(a), Defendants issued itemized wage statements to Plaintiff which "did not accurately reflect all applicable hourly rates [nor] the corresponding number of hours worked by Plaintiff at each applicable hourly rate." Complaint ¶ 100.

36. Labor Code section 226(e) provides an employee a minimum of $50.00 for the initial pay period in which a violation occurs, and $100.00 for each further pay period in which a violation occurs, up to a maximum penalty of $4,000.00 per employee. The statute of limitations for penalties under Labor Code section 226 is one year. Cal. Civ. Proc. Code § 340(a).

37. During the one year preceding the filing of the Complaint, Plaintiff received approximately 25 wage statements. By multiplying the number of wage statements by the potentially applicable penalty ($100.00), subtracting $50.00 for the initial pay period, the total amount in controversy for Plaintiff's Labor Code section 226 claim would be **$2,450.00.**

**6. Punitive Damages**

38. Additionally, Plaintiff seeks to recover punitive damages against Defendant. *See* Complaint, ¶¶ 40, 50, 62, 69; Prayer for Relief. Verdicts show that punitive damages in similar employment cases typically exceed $75,000.00 alone. *See* McCoy Decl., ¶ 6, Ex. C to McCoy Decl. [*Babyak v. Cardiovascular Systems, Inc.* 2017 WL 1907785 (Los Angeles Sup. Ct. Apr. 25, 2017) (plaintiff awarded $22.4 million in punitive damages for claims of retaliation in violation of Cal. Lab. Code § 1102.5 and Cal. Gov. Code § 12940 et seq., and wrongful termination in violation of public policy); *Casillas v. Central California Faculty Med. Grp., Inc.*, 2016 WL 9281429 (Fresno County Sup. Ct. Oct. 27, 2016) (plaintiff awarded $500,000.00 in punitive damages for claims of retaliation in violation of Cal. Lab. Code § 1102.5 and wrongful termination in violation of public policy); *Williams v. Wyndham Vacation Ownership*, 2016 WL 8114384 (San Francisco County Sup. Ct. Nov. 17, 2016) (plaintiff awarded $18.5 million in punitive damages for claims of retaliation in violation of Cal. Lab. Code § 1102.5 and wrongful termination in violation of public policy)].

**7. Attorneys' Fees**

39. Plaintiff also seeks to recover attorneys' fees and costs. *See* Complaint, ¶¶ 41, 51, 102, 117; Prayer for Relief. Requests for attorney's fees must be considered in ascertaining the amount in controversy. *See Galt*, 142 F.3d at 1156 (claims for statutory attorney's fees to be included in amount in controversy, regardless of whether award is discretionary or mandatory). Here, Plaintiff, if successful, would be entitled to an award of attorneys' fees that itself "more likely than not" would exceed $75,000.00 because recent verdicts show attorneys' fees in similar employment cases typically exceed $75,000.00. *See* McCoy Decl., ¶¶ 7-8, Ex. D to McCoy Decl. [*Coyle v. Regents of The University of California, et al.*, 2017 WL 1091234 (Riverside County Sup. Ct. Feb. 7, 2017) (plaintiff awarded $1,477,293.00 in attorneys' fees in case involving claims of retaliation in violation of Cal. Lab. Code § 1102.5 and wrongful termination in violation of public policy); *Begazo v. Passages Silver Strand LLC*, 2017 WL 2402841 (Los Angeles County Sup. Ct. Mar. 3, 2017) (plaintiff awarded $375,568.00 in attorneys' fees in case involving claims of retaliation in violation of Cal. Lab. Code § 1102.5 and wrongful termination in violation of public policy)].

40. While Defendants deny any liability as to Plaintiff's claims, for Plaintiff's foregoing claims for lost wages ($78,461.80), unpaid overtime compensation ($72,693.60), meal and rest period violations (totaling $24,234 between the two claims), waiting time penalties ($6,923.10), and penalties for inaccurate wage statements ($2,450.00) alone, it is "more likely than not" based on Plaintiff's own allegations in his Complaint that the amount in controversy exceeds ***$184,762.50***, exclusive of interest and costs, which is more than double the statutory minimum of $75,000.00 required by 28 U.S.C. § 1332(a).

**IV. VENUE**

41. Venue lies in the United States District Court, Northern District of California pursuant to 28 U.S.C. §§ 84(c)(2), 1441, and 1446(a). This action was originally in the Superior Court of the State of California, County of San Francisco. The County of San Francisco is within the jurisdiction of the United States District Court, Northern District of California.

**V. NOTICE OF REMOVAL**

42. Defendants will give notice of the filing of this Notice of Removal to Plaintiff and to the Clerk of the Superior Court of the State of California in and for the County of San Francisco. This Notice of Removal is concurrently being served on Plaintiff.

**VI. PRAYER FOR REMOVAL**

43. WHEREFORE, Defendants pray that this civil action be removed from the Superior Court of the State of California, County of San Francisco, to the United States District Court for the Northern District of California.

DATED: October 30, 2019

SEYFARTH SHAW LLP

By: */s/ Ryan McCoy*
Ari M. Hersher
Ryan McCoy

Attorneys for Defendants
THE HERTZ CORPORATION and DTG OPERATIONS, INC